# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-04-00153-CV

**James Johnson, Individually and on behalf of
others similarly situated, Appellant**

**v.**

**MHSB Enterprises, L.L.C. d/b/a America's Service Station and
MHSB, Inc. d/b/a America's Service Station, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
## NO. GN104067, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

James Johnson appeals the trial court's summary judgment in favor of MHSB
Enterprises L.L.C. and MHSB, Inc. (collectively, MHSB) on his claims for breach of contract, unjust
enrichment, money had and received, and deceptive trade practices. Johnson asserts that the
evidence amounts to more than a scintilla of evidence to support his theories, which rest on MHSB's
practice of including an automatic charge for "shop supplies" and "hazardous waste" disposal on
customers' invoices for car repairs. Because there is no more than a scintilla of evidence to support
any of Johnson's claims, we affirm the judgment of the district court.

## BACKGROUND

Johnson dropped off his Oldsmobile at MHSB's service center on August 11, 2001,
for repair work on his transmission. Subsequently, he received an estimate for the repair work

totaling about $890, excluding tax.  MHSB did not break the estimate into parts and labor or any

other categories, and Johnson did not ask for such details.  When Johnson returned to pick up his car,

he was presented with an invoice, which amounted to $872.54, including tax.  Besides itemized

charges for parts and labor, the invoice contained a non-itemized charge of $47.66 for a line item

labeled "shop supplies/hazardous material."

Johnson's affidavit states that he asked an MHSB employee to explain the shop

supplies/hazardous material charge.  The employee allegedly told him that it was included on all

invoices and was automatically calculated by the computer.  MHSB's employees could not detail for

Johnson what shop supplies were used or if any hazardous material charges were incurred while

repairing his car.  Nonetheless, Johnson paid the full amount due, and left the service center with his

fully repaired vehicle, because he "knew that if [he] didn't pay the invoice, MHSB would not have

released [his] car."[1]

Johnson filed a class-action lawsuit against MHSB for breach of contract, unjust

enrichment, money had and received, and violations of the Texas Deceptive Trade Practices-

Consumer Protection Act (DTPA) based on the allegedly "fictional" shop supplies/hazardous

material charge.  Johnson's primary contention was that MHSB's charging of the fee was not

correlated to the actual supplies, if any, used in the repair of a particular automobile.  This contention

is based on the deposition testimony of MHSB's owner, Kenneth Daniel, explaining that the shop

---

[1] The price paid by Johnson, $872.54, included a $10 discount because Johnson was a repeat customer.  In fact, this was his third visit to MHSB.  On each of the previous visits the invoice presented to Johnson included a line item charge for shop supplies/hazardous material.  On both occasions Johnson asked for an explanation of the charge and received the same response he received this time.  Both times he paid the bill in full and left with a fully repaired vehicle.

supplies/hazardous material charge fee is calculated at 6% of the cost of the parts and labor charged to a customer and is automatically added to all invoices.

MHSB filed a motion for summary judgment alleging both traditional and no-evidence grounds. The trial court granted the motion, but did not state the basis for its judgment. Johnson asserts that the trial court relied only on traditional grounds when it considered MHSB's summary judgment motion because "the grounds for a no-evidence summary judgment were not clearly stated." While the trial judge did state that "to the extent [the motion] is not clearly stated, it will be considered a traditional motion for summary judgment," she did not, at the hearing or in the final order, state the basis for the judgment.[2] To prevail on appeal against a summary judgment where the trial court did not specify the basis on which the judgment was granted, Johnson must demonstrate that the court erred with regard to all grounds raised in the motion. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872-73 (Tex. 2000); *see also Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995). Johnson asserts that summary judgment was improper because he submitted more than a scintilla of probative evidence on each of his claims.

## STANDARD OF REVIEW

A party seeking a traditional summary judgment bears the burden of showing that no genuine issue of material fact exists and that they are entitled to judgment as a matter of law. Tex.

---

[2] The first sentence of the final order originally read, "On this day came to be heard Defendant's Motion for Summary Judgment under TRCP 166a and 166a(i)." However, the judge crossed out the phrase "under TRCP 166a and 166a(i)" and referred to the motion as the Motion for Summary Judgment throughout the order. The judge broadly stated, "After reviewing the motion, the evidence and pleadings on file, the response by Plaintiff, if any, and the arguments of counsel, the Court finds that Defendants' motion has merit and should be in all things granted." There was no statement explicitly stating the basis for the court's finding.

3

R. Civ. P. 166a(c); *Haase v. Glazner*, 62 S.W.3d 795, 797 (Tex. 2001). A movant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim. *Elliot-Williams Co. v. Diaz*, 9 S.W.3d 801, 803 (Tex. 1999). We review a trial court's grant of summary judgment de novo. *FM Props.*, 22 S.W.3d at 872. When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we resolve any doubts in favor of the nonmovant. *Southwestern Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). We affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996).

A party seeking a no-evidence summary judgment must assert that no evidence exists as to one or more of the essential elements of the nonmovant's claims on which it would have the burden of proof at trial. *Holmstrom v. Lee*, 26 S.W.3d 526, 530 (Tex. App.—Austin 2000, no pet.). Once the movant specifies the elements on which there is no evidence, the burden shifts to the nonmovant to raise a fact issue on the challenged elements. Tex. R. Civ. P. 166a(i). To raise a genuine issue of material fact, the nonmovant must set forth more than a scintilla of probative evidence as to an essential element of the claim on which the nonmovant would have the burden of proof at trial. *See id.*; *Merrill Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). If the evidence supporting a finding rises to a level that would enable reasonable, fair-minded persons to differ in their conclusions, then more than a scintilla of evidence exists. *Havner*, 953 S.W.2d at 711. Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of fact, and the legal effect is that there is no evidence. *Jackson v.*

4

*Fiesta Mart, Inc.*, 979 S.W.2d 68, 71 (Tex. App.—Austin 1998, no pet.) (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)). If the nonmovant fails to present evidence raising a genuine issue of material fact as to the challenged element, the trial court must grant the motion. Tex. R. Civ. P. 166a(i). A no-evidence summary judgment is essentially a directed verdict granted before trial, to which we apply a legal-sufficiency standard of review. *Jackson*, 979 S.W.2d at 70.

## BREACH OF CONTRACT

Johnson's second amended petition alleged that he had a "contract" with MHSB, under which MHSB agreed to "repair his car by using the requisite parts and labor" and that he agreed to "pay for the parts and labor," but MHSB "marked up the cost of parts and labor by an additional six percent (6%) under the guise of 'shop supplies.'" However, Johnson cites no evidence in the record to support these assertions, other than a statement in his affidavit that, "I agreed to pay for parts and labor needed to repair my vehicle." Conclusory statements unsupported by facts in an affidavit are insufficient to raise a genuine issue of fact to prevent the rendition of summary judgment. *See Texas Div.-Tranter, Inc. v. Carrozza*, 876 S.W.2d 312, 314 (Tex. 1994); *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984). Furthermore, Johnson had taken vehicles to MHSB to be repaired on previous occasions and was aware that estimates included a charge for shop supplies/hazardous material and that this charge would be reflected by a line item on the invoice. Johnson cites no evidence in the form of written documents, notes, conversations he had with MHSB employees, or representations that could support the formation of a contract on the terms he asserts.[3]

---

[3] Johnson compares the shop supplies/hazardous material fee to the "overhead" any business necessarily incurs and attempts to characterize the alleged "contract" he had with MHSB as a "time

5

The only evidence to support to support his allegation, besides his conclusory statement, is the invoice and the written estimate prepared by the MHSB technician and approved by Johnson.[4] The estimate does not include a line item reflecting the shop supplies/hazardous material charge, but the total, $892.54 plus tax, does include the charge.[5] Even if there were a contract between the parties, the evidence indicates that its terms required MHSB to repair Johnson's vehicle for an amount not to exceed the estimate. Assuming such a contract existed, there is no evidence that MHSB breached it, because the total cost of repair came in under the estimate. We conclude that summary judgment on Johnson's breach-of-contract claim was proper.

## UNJUST ENRICHMENT

A party may recover under a theory of unjust enrichment when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage. *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). Unjust enrichment is an equitable principle holding that one who receives benefits unjustly should make restitution for those

---

and materials" construction agreement. The San Antonio court of appeals has indicated that "time and materials" contracts do not allow for payment of overhead expenses. *See Kubela v. Schuessler Lumber Co.*, 492 S.W.2d 92, 95 (Tex. Civ. App.—San Antonio 1973, no writ). Because there is no evidence that Johnson and MHSB had a contract to repair his car for only the cost of labor and materials, we need not reach this argument.

[4] It is unclear from the record whether Johnson approved the repair work after actually seeing the written estimate or after he was told what the total cost would be. In his affidavit, Johnson stated that he did not recall the specifics, but the estimate he was given was not itemized in any way. In any case, Johnson admitted in his deposition that because of his prior experiences he was aware of MHSB's practice of charging for shop supplies/hazardous material.

[5] The total cost for the repair was $872.54, tax included. Johnson received a $10 discount because he was a repeat customer.

6

benefits. *Bransom v. Standard Hardware, Inc.*, 874 S.W.2d 919, 927 (Tex. App.—Fort Worth 1994, writ denied). Unjust enrichment occurs when the "person sought to be charged [has] wrongfully secured a benefit or [has] passively received one which it would [be] unconscionable to retain." *City of Corpus Christi v. S.S. Smith & Sons Masonry, Inc.*, 736 S.W.2d 247, 250 (Tex. App.—Corpus Christi 1987, writ denied). Recovery under unjust enrichment is not dependent on the existence of a wrong. *Bransom*, 874 S.W.2d at 927.

Johnson has alleged no duress used by MHSB to lure him into allowing it to repair his car or to take his payment for the shop supplies. Although he alleges fraud and undue advantage, the record does not support these claims. Fraud is a false material misrepresentation that (1) was either known to be false when made or was asserted without knowledge of its truth, (2) was intended to be acted upon, (3) was relied upon, and (4) caused injury. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001); *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998). Nondisclosure of a material fact may be equivalent to a misrepresentation when the circumstances impose a legal duty to speak and the party deliberately remains silent. *See Insurance Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998). Thus, silence may be equivalent to a false representation only when the particular circumstances impose a duty on the party to speak and he deliberately remains silent. *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001). Whether such a duty exists is a question of law. *Id.* Generally, a duty to speak exists only when the parties have a fiduciary or confidential relationship. *Morris*, 981 S.W.2d at 674. No fiduciary or confidential relationship between the parties was pleaded or proven by Johnson, nor has he alleged that a partial disclosure by MHSB created a false impression. *See*

7

*Bradford*, 48 S.W.3d at 755-56. We conclude that MHSB had no legal duty to tell Johnson that he would be charged the shop supplies/hazardous material fee when it gave Johnson an estimated cost to repair his car, and there is no evidence of any material misrepresentation made by MHSB to Johnson.

As for the taking of "undue advantage," Johnson has not identified any actionable conduct by MHSB. There is no evidence that MHSB did not actually use any shop supplies or dispose of any hazardous materials removed from Johnson's car. Johnson testified that he was aware at the time he brought the car to MHSB that it charged a fee for shop supplies and hazardous material disposal. We fail to see how MHSB took "undue advantage" of Johnson by charging him the $47.66 fee, when the total charge was less than the estimate MHSB had originally provided. Johnson has failed to set forth any evidence that MHSB obtained a benefit from him by fraud or the taking of an undue advantage, and summary judgment on this claim was proper.

**MONEY HAD AND RECEIVED**

An action for money had and received arises when the defendant obtains money that in equity and good conscience belongs to the plaintiff. *Staats v. Miller*, 243 S.W.2d 686, 687 (Tex. 1951); *see Austin v. Duval*, 735 S.W.2d 647, 649 (Tex. App.—Austin 1987, writ denied). This action is not premised on wrongdoing, but looks only to the justice of the case and inquires whether the defendant has received money that rightfully belongs to another. *Greer v. White Oak State Bank*, 673 S.W.2d 326, 329 (Tex. App.—Texarkana 1984, no writ). In short, it is an equitable doctrine applied to prevent unjust enrichment. *Hunt v. Baldwin*, 68 S.W.3d 117, 132 (Tex. App.—Houston [14th Dist.] 2001, no writ). A cause of action for money had and received belongs conceptually to

8

the doctrine of unjust enrichment. *Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 164 (Tex. App.—El Paso 1997, no writ).

Johnson has asserted that the $47.66 fee "rightfully" belonged to him because MHSB misrepresented that it used shop supplies in the repair of his car and that the charge was to recoup costs incurred in servicing his car. These allegations should have been determined by a trier of fact only if there was more than a scintilla of evidence that either MHSB had not used shop supplies or waste removal in the repair of the car or that the fee charged was not to cover such expenses. There is no such evidence in the record. Summary judgment was proper on this claim.

## DTPA VIOLATIONS

Johnson's real concern in this lawsuit, as expressed in his deposition testimony, is that the 6% of parts charged as "shop supplies/hazardous material" is not itemized—and he therefore was unable to tell if any shop supplies at all had actually been used on his car and, if so, what those supplies were.

He testified that if MHSB had documented the specific shop supplies it used in repairing his car, he believed that MHSB should be allowed to recover such charges. He also conceded that MHSB could have marked up its costs for labor by incorporating an amount to cover shop supplies and hazardous materials disposal. Basically, Johnson believes that MHSB's line-item charge for shop supplies and hazardous material disposal should either have been invisible to the customer (appearing in the form of increased labor charges) or clearly itemized (in the form of, for example, numbers of bottles of solvents or shop rags used in servicing an automobile); he does not assert that MHSB cannot charge customers for such items at all.

9

Johnson pleaded two claims under the DTPA: that MHSB engaged in false, misleading, or deceptive acts and that MHSB engaged in unconscionable acts. *See* Tex. Bus. & Com. Code Ann. § 17.50(a)(1), (3) (West 2002). To recover under his first DTPA claim, Johnson had to prove that (1) he is a consumer, (2) MHSB engaged in false, misleading, or deceptive acts, and (3) these acts constituted a producing cause of his damages. *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995); *see* Tex. Bus. & Com. Code Ann. § 17.50(a)(1). Regarding the second requirement, Johnson's second amended petition alleged that MHSB engaged in the following actionable conduct: (1) representing that services have characteristics, ingredients, uses, benefits, or quantities that they do not have; (2) advertising services with intent not to sell them as advertised; (3) representing that an agreement confers or involves rights, remedies, or obligations that it does not have or involve; (4) knowingly making false or misleading statements of fact concerning the need for parts or repair services; (5) basing a charge for the repair of any item in whole or in part on a guaranty or warranty instead of on the value of the actual repairs made or work to be performed on the item without stating separately the charges for the work and the charge for the warranty or guaranty; and (6) representing that work or services have been performed when the work or services were not performed. *See* Tex. Bus. & Com. Code Ann. § 17.46(b)(5), (9), (12), (13), (15), (22) (West Supp. 2004).

Johnson has pointed to no evidence in the record of any representation by MHSB that their servicing of his car had characteristics, ingredients, uses, benefits, or quantities that it did not have or that work or services had been performed on his car when they had not been. *See id*. § 17.46 (b)(5), (22). Although there is evidence that the methodology by which MHSB arrived at the amount

10

to charge Johnson for shop supplies and waste disposal is not necessarily correlated to the amount of supplies or disposal costs used in connection with his car, Johnson could not point to any evidence that the shop had not used any supplies or performed any waste disposal to do the repair work. Johnson presented no evidence of advertising performed by Maund relating to its services. *See id.* § 17.46(b)(9). We have already determined that there is no evidence that MHSB and Johnson had an "agreement," other than for MHSB to repair Johnson's car for $892 or less, in which case there is no evidence of any representation by MHSB about the rights, remedies, or obligations under such "agreement." *See id.* § 17.46(b)(12). Johnson has pointed to no evidence of misrepresentations by MHSB about the need for parts or services—in fact, he testified that he was satisfied with the work MHSB performed and that his transmission was adequately repaired. *See id.* (13). Finally, there is no evidence in the record that MHSB based its charge for the repair of Johnson's car in whole or in part on a guaranty or warranty instead of on the value of the actual repairs made or work to be performed on the car without stating separately the charges for the work and the charge for the warranty or guaranty—there is no evidence of any guaranty or warranty purchased or owned by Johnson or sold by MHSB at all. *See id.* § 17.46(b)(15).[6]

Johnson's claim under the DTPA for unconscionability requires proof of an act or practice that, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree. *See id.* § 17.45(5) (West 2002), § 17.50(a)(3). To prove an unconscionable action or course of action, Johnson must show that

---

[6] Because we hold that there is no evidence to support that MHSB engaged in any prohibited acts, we need not reach the issue of whether Johnson relied on MHSB's actions to his detriment. *See* Tex. Bus. & Com. Code Ann. § 17.50(a)(1)(B) (West 2002).

MHSB took advantage of his lack of knowledge and "that the resulting unfairness was glaringly noticeable, flagrant, complete and unmitigated." *Morris*, 981 S.W.2d at 677 (quoting *Chastain v. Koonce*, 700 S.W.2d 579, 584 (Tex. 1985)); *Bennett v. Bank United*, 114 S.W.3d 75, 81 (Tex. App.—Austin 2003, no pet.). The relevant inquiry examines the entire transaction, not MHSB's intent. *See Chastain*, 700 S.W.2d at 583. Johnson has pointed us to no evidence indicating that MHSB's conduct in charging him a fee for supplies/hazardous waste resulted in glaringly noticeable, flagrant, complete, and unmitigated unfairness. In fact, Johnson has admitted that he was fully aware of MHSB's practice of charging a line item fee for shop supplies and the disposal of hazardous materials. Based on this record as a whole, we find no evidence of unconscionable conduct. We hold that summary judgment on Johnson's DTPA claims was proper.

## CONCLUSION

Because Johnson failed to raise more than a scintilla of evidence to support his claims for breach of contract, unjust enrichment, money had and received, and DTPA violations, we affirm the summary judgment of the district court.

_____

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Affirmed

Filed: October 7, 2004

12