# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 14, 2026

Lyle W. Cayce
Clerk

No. 25-20020

———————

Allstate Indemnity Company; Allstate Property and Casualty Company; Allstate County Mutual Insurance Company; Allstate Fire and Casualty Insurance Company,

*Plaintiffs—Appellants*,

*versus*

Akash Bhagat; Emergency Healthcare Partners, L.P., *doing business as* Memorial Heights Emergency Center, *doing business as* Memorial Heights Emergency Room; Memorial Heights Emergency Center Motor Vehicle Accident Facility Administration, L.L.C., *doing business as* Memorial Heights Emergency Center Motor Vehicle Accident - Facility; Memorial Heights Emergency Center Motor Vehicle Accident Professional Administration, L.L.C., *doing business as Memorial Heights Emergency Center Motor Vehicle Accident - Physicians*; Bhagat Investments, Incorporated; Elizabeth Fair; Southern Emergency Physicians Limited, L.L.P.; Ruben Veloz; Pedram Behzadi; Tarek Defrawi; Andrea Marconi; Sara Reader; Jason Masvero; Leia England,

*Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:24-CV-2573

———————————————————————

Before BARKSDALE, WILLETT, and DUNCAN, *Circuit Judges*.

STUART KYLE DUNCAN, *Circuit Judge*:

Allstate sued several Defendants associated with a Houston emergency medical center, asserting RICO claims predicated on mail fraud under 18 U.S.C. § 1962(c), RICO conspiracy under 18 U.S.C. § 1962(d), and state-law common-law claims for fraud, conspiracy to defraud, unjust enrichment, and money-had-and-received. The district court dismissed all claims with prejudice and denied Allstate leave to amend its complaint. We REVERSE and REMAND.

I

Defendants are individuals and entities that own, manage, and operate Memorial Heights Emergency Center ("Memorial Heights") in Houston, Texas.

In 2018, Defendants began entering into agreements with personal injury attorneys to refer clients to Memorial Heights under letters of protection guaranteeing it payment from future insurance settlements. At the same time, one Defendant, Dr. Akash Bhagat, created two corporate entities to bill facility and physician fees to car accident patients referred by the attorneys. Via those entities, Defendants charged the referred patients using emergency billing codes, sometimes at rates nearly triple those normally charged.

Visits from car accident patients to Memorial Heights doubled. Patients regularly sought treatment days or weeks after their accidents. Some traveled from as far away as 92 miles, bypassing other medical centers to reach this inconspicuous facility in a modest shopping center far from any major thoroughfares.

2

No. 25-20020

Memorial Heights typically gave the patients several expensive diagnostic tests—including multiple CT scans—without properly documenting the need, only to discharge them without further treatment. Treating physicians often prescribed ibuprofen and other drugs, but no records exist showing any prescriptions were sent to a pharmacy. Services were charged to standard medical billing codes reserved for severe and life-threatening emergencies.

Following these visits, Memorial Heights would forward bills to the attorneys with whom it had agreements, who would in turn present the bills to Allstate as part of settlement demands. Between August 2018 and November 2022, Allstate settled with 635 claimants. Eventually, Allstate discovered the scheme and sued Defendants to recover about $4.7 million in settlement money as well as treble damages and attorney fees under 18 U.S.C. § 1964(c).

The district court dismissed Allstate's complaint with prejudice, however. First, the court held Allstate did not adequately allege that it relied on the fraudulent bills when settling the claims. That lack of reliance doomed the RICO, common-law fraud, conspiracy, unjust enrichment, and money-had-and-received claims. Second, as to the RICO and common-law fraud claims, the court held Allstate did not adequately plead that the fraudulent bills directly or proximately caused injury.

Third, the court held Allstate was "complicit" because it knew about the fraud but continued to engage in settlement negotiations. And, in any case, settling the claims constituted an intervening cause that separated the fraud from the injury. Finally, the court held it could not effectively adjudicate a suit with 635 separate claims, explaining that "[Allstate's] lawsuit even if plausible cannot be judiciously managed or tried as a single lawsuit."

Allstate appeals.

## II

We review a dismissal under Federal Rule of Civil Procedure 12(b)(6) *de novo*, "accept[ing] all well-ple[d] facts as true and constru[ing] the complaint in the light most favorable to the plaintiff." *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020) (citation omitted). To withstand a motion to dismiss, a complaint must allege "more than labels and conclusions," as "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It must state a "plausible claim for relief," rather than facts "merely consistent with" liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (cleaned up).

We "review[] a district court's interpretation of state law de novo." *Warren v. Chesapeake Expl., L.L.C.*, 759 F.3d 413, 415 (5th Cir. 2014) (citing *Am. Bankers Ins. Co. v. Inman*, 436 F.3d 490, 492 (5th Cir. 2006)). Federal courts interpret state law as declared in statutes by its legislature or through the opinions of its highest court. *See Hulin v. Fibreboard Corp.*, 178 F.3d 316, 318 (5th Cir. 1999) (citing *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).

We review a dismissal under Federal Rule of Civil Procedure 9(b) *de novo*. *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 520 (5th Cir. 1993).

## III

Allstate raises four issues on appeal. First, it argues the district court analyzed its RICO claims using the wrong predicate crime. Second, it contends the court improperly ruled that it did not sufficiently plead claims for common-law fraud and conspiracy. Third, it avers the court analyzed its unjust enrichment and money-had-and-received claims under the wrong

standard. Finally, it argues the court erred by denying it leave to amend.[1] We address each argument in turn.

## A

Beginning with the RICO claims, Allstate argues that the district court erred by identifying *fraud* as the predicate offense, rather than *mail fraud*. According to Allstate, this foundational error led the district court to err with respect to reliance and causation. In response, Defendants argue that Allstate's alleged damages were speculative and based on unprovable assumptions. We conclude that the district court erred in dismissing Allstate's RICO claims.

### 1

The district court began on the wrong foot by asserting that "[f]raud is the underlying claim that undergirds the entirety of the plaintiffs' lawsuit." Not so. "[T]he key term in § 1962(c)—'racketeering activity'—is a *defined* term, and Congress defined the predicate act not as fraud *simpliciter*, but mail fraud—a statutory offense unknown to the common law." *Bridge v. Phx. Bond & Indem. Co.*, 553 U.S. 639, 652 (2008).

The court then compounded that error by holding that a fraud-based RICO claim requires Allstate to prove it relied on the allegedly fraudulent materials in settling each claim. Again, that was incorrect. "[T]he mere fact that the predicate acts underlying a particular RICO violation happen to be fraud offenses does not mean that reliance, an element of common-law fraud,

---

[1] Out of an abundance of caution, Allstate briefs whether Defendants are immune under the witness-litigation and judicial-proceedings privileges, arguments to which Defendants respond at length. Because the district court did not address this question, however, we decline to do so. If necessary, the issue can be addressed on remand. *See Deanda v. Becerra*, 96 F.4th 750, 767 (5th Cir. 2024) ("[W]e are a court of review, not first view." (quoting *Rest. L. Ctr. v. U.S. Dep't of Lab.*, 66 F.4th 593, 597 (5th Cir. 2023))).

No. 25-20020

is also incorporated as an element of a civil RICO claim." *Id.* at 653 (quoting *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 476 (2006) (Thomas, J., concurring in part and dissenting in part)); *see also Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 676 (5th Cir. 2015) (reliance not necessary in cases predicated on mail fraud).[2]

2

Instead of justifying those errors, Defendants argue they were harmless. Specifically, they contend that, "in most cases, the plaintiff will not be able to establish even but-for causation if no one relied on the misrepresentation." So, we move on to consider the district court's rulings on causation.

The district court ruled Allstate failed to adequately plead proximate cause and overcome the hurdle of intervening cause. In particular, the court reasoned that the settlements severed the causal link between the allegedly fraudulent mailings and the payments.[3] We disagree.

Proximate cause is "a flexible concept" employed to "label generically the judicial tools used to limit a person's responsibility for the consequences of that person's own acts." *Bridge*, 553 U.S. at 654 (internal quotation omitted). The analysis should place "particular emphasis on the demand for some direct relation between the injury asserted and the injurious

---

[2] As discussed below, *see infra* III(B), Allstate did adequately plead reliance with respect to its common-law fraud claim. But the district court erred in holding that such a showing was necessary with respect to its RICO mail-fraud claim.

[3] Although the court incorrectly analyzed proximate and intervening cause, Allstate is wrong that the court improperly raised intervening cause *sua sponte*. Intervening cause is a part of the proximate cause analysis. *See, e.g.*, *E.I. du Pont de Nemours & Co. v. McCain*, 414 F.2d 369, 374 (5th Cir. 1969) ("The theory of new and independent cause is not an affirmative defense; it is but an element to be considered by the jury in determining the existence or non-existence of proximate cause.").

conduct alleged." *Ibid.* (internal quotation omitted). The Supreme Court's *Bridge* decision provides an apt example of this principle in action. There, the defendants tried to circumvent a tax-lien auction's one-bid-per-entity rule by paying third parties to make bids on their behalf. *Id.* at 642, 658. The plaintiffs, who were other auction participants, satisfied proximate cause because their lost opportunities to purchase liens were "a foreseeable and natural consequence of [the] scheme." *Id.* at 658.

Our *Plambeck* decision provides another factually-similar illustration. There, the defendants created an intricate scheme to identify car-accident victims, prescribe unnecessary medical treatment, and fraudulently bill Allstate and other insurers through settlement agreements. *Plambeck*, 802 F.3d at 671–72. We held that Allstate proved the scheme was the proximate cause of its injury because the insurers were not "unforeseeable victims or otherwise wronged by the caprice of chance" as the entire objective and structure of the enterprise "was to collect from the insurance companies." *Id.* at 676.

Those cases point the way here. Allstate sufficiently alleged the Memorial Heights scheme proximately caused it to pay for fraudulently billed services as part of the settlements between Allstate and the relevant patients. Just as in *Bridge*, proximate cause is not defeated merely because Allstate was a third party to the allegedly fraudulent statements (medical bills) that Memorial Heights made to claimants' attorneys. *See* 553 U.S. at 656–57 (quoting Restatement (Second) of Torts §§ 870 & cmt. h, 435A cmt. a (A.L.I. 1979)).

For similar reasons, the district court here erred by finding the settlements were an intervening cause barring Allstate's claims. That ruling contravenes our decision in *Plambeck*, where the causal chain was not broken merely because Allstate's settlements were based partially on fraudulent

medical bills. *See* 802 F.3d at 676. The same result obtains here, namely that Allstate adequately pled proximate cause.[4]

Finally, we disagree with Defendants that Allstate failed to sufficiently plead but-for causation. To allege but-for causation, a plaintiff need plead only that the harm would not have occurred absent the defendant's conduct. *United States v. Ramos-Delgado*, 763 F.3d 398, 402 (5th Cir. 2014). This is not a difficult burden, and Allstate met it. *Ibid.* It pled that but for the allegedly fraudulent bills, it would not have paid money to settle the claims for those bills. *See also Plambeck*, 802 F.3d at 677 n.3 (undisputed that but-for causation requirement was satisfied). That is enough.

3

Allstate next argues that the district court erred by ruling it did not plead fraud with the requisite specificity. Under Federal Rule of Civil Procedure 9(b), plaintiffs alleging a fraud-predicate RICO claim must "state with particularity the circumstances constituting fraud." *Arruda v. Curves Int'l, Inc.*, 861 F. App'x 831, 834 (5th Cir. 2021) (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997)). At a minimum, plaintiffs must plead the "who, what, when, where, and how of the alleged fraud." *Ibid.* (citing *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)). We again agree with Allstate.

---

[4] The district court also seemed to conclude that proximate cause failed because Allstate still paid the bills after it knew about the fraud. The court did not explain what facts supported this conclusion, however. Allstate argues that the court based this ruling on portions of Dr. Bhagat's 2022 deposition, but the court's opinion leaves that unclear. In any event, resolving such factual disputes based on materials outside the complaint would be inappropriate in ruling on a Rule 12(b)(6) motion. *See, e.g.*, *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) ("court must limit itself to the contents of the pleadings" in considering Rule 12(b)(6) motion).

No. 25-20020

Contrary to the district court's ruling, Allstate sufficiently alleged "who, what, when, where, and how" in outlining Defendants' alleged fraudulent scheme. *See ibid.* Indeed, Allstate's complaint included a detailed appendix listing the specifics of each allegedly fraudulent billing. Accordingly, Allstate met its Rule 9(b) pleading burden.

4

Finally, Defendants argue at length that Allstate did not adequately allege plausible damages. We again disagree.

Allstate's alleged damages are anything but speculative. To the contrary, Allstate pled as damages the concrete amounts it allocated for the allegedly fraudulent claims Defendants made. That is sufficient under our precedent. *See, e.g.*, *Plambeck*, 802 F.3d at 677 (holding damages from a similar insurance-fraud scheme not speculative).

*        *        *

In sum, we hold that Allstate adequately pled its RICO claims.

B

We turn next to Allstate's common-law fraud and conspiracy-to-defraud claims.

Allstate satisfied the first four prongs of a Texas common-law fraud claim[5] because, as discussed above, it adequately pled the "who, what,

---

[5] "The elements of a Texas common-law fraud claim are: (1) the speaker made a material representation; (2) the representation was false; (3) when the speaker made the representation he knew it was false or he made it recklessly without any knowledge of its truth or falsity; (4) the speaker's intention was that the other party should act upon the representation; (5) the other party acted in reliance upon the representation; and (6) the other party was injured." *Allstate Ins. Co. v. Benhamou*, 190 F. Supp. 3d 631, 664 (S.D. Tex. 2016) (citing *Tilton v. Marshall*, 925 S.W.2d 672, 684 (Tex. 1996)).

where, and how" of the alleged fraud. As to the fifth prong (reliance), Allstate alleged that it actually relied on Defendants' medical bills and made payments based on those bills. *See Allstate Ins. Co., L.L.C. v. Receivable Fin. Co.*, 501 F.3d 398, 406 (5th Cir. 2007) (plaintiff must plead actual reliance upon misrepresentation) (citing *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)).

In response, Defendants assert that Allstate's reliance was not reasonable because it occurred in the adversarial context of settlement negotiations. We disagree. Defendants cite no case suggesting that an insurance company cannot reasonably rely on medical information presented as fact during a settlement negotiation. Defendants' authorities address only whether, during settlement negotiations, a party may reasonably rely on the statements of its adversary's counsel.

As to injury, our analysis above on damages in the RICO context, *supra* at III(A), applies equally to common-law fraud's injury element. Allstate has pled injury resulting from its reliance on a misrepresentation to satisfy this element of its fraud claim. *See Bohnsack v. Varco, L.P.*, 668 F.3d 262, 274 (5th Cir. 2012) (to recover for fraud in Texas, "plaintiff must show he was injured because of his reliance on a misrepresentation").

In sum, we hold that Allstate has adequately stated a claim for common-law fraud. The parties agree that Allstate's conspiracy-to-defraud claim rises or falls with its common-law fraud claim. Therefore, because Allstate has adequately pled common-law fraud, its conspiracy-to-defraud claim also survives the motion to dismiss.

C

We turn next to the district court's dismissal of Allstate's claims for unjust enrichment and money-had-and-received. The district court summarily dismissed these two claims. In the court's view, the claims turn

on "whether the plaintiffs have 'plausibly' pled a cause of action for fraud and can establish that they suffered multiple injuries as a 'direct' result of the defendants' alleged fraudulent representation(s)." We again agree with Allstate that this was error.

First, "[u]njust enrichment is an equitable theory that allows a party to recover when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Allstate Ins. Co. v. Benhamou*, 190 F. Supp. 3d 631, 665 (S.D. Tex. 2016) (citing *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992)). It occurs when the "person sought to be charged [has] wrongfully secured a benefit or [has] passively received one which it would [be] unconscionable to retain." *Ibid.* (alterations in original) (quoting *City of Corpus Christi v. S.S. Smith & Sons Masonry, Inc.*, 736 S.W.2d 247, 250 (Tex. App.—Corpus Christi 1987, writ denied)). The claim is an equitable right. *Ibid.* Contrary to the district court's view, Allstate adequately pled such a claim by alleging that Defendants fraudulently obtained a benefit (the payments) they have no right to retain.

Citing *Fortune Production Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000), Defendants argue that a valid agreement between two parties precludes an equitable remedy like unjust enrichment. We again disagree. *Conoco* says nothing about a case—like this one—where no direct agreement exists between the plaintiff and the defendant. And Defendants cite no authority to support the notion that agreements between third parties preclude recovery for unjust enrichment.

Second, a money-had-and-received claim seeks to determine "to which party . . . the money, in equity, justice, and law, belong[s]." *Bank of Saipan v. CNG Fin. Corp.*, 380 F.3d 836, 840 (5th Cir. 2004) (quoting *Staats v. Miller*, 243 S.W.2d 686, 687–88 (Tex. 1951)). It is "less restricted and fettered by technical rules and formalities than any other form of action,"

aimed at "abstract justice," and only asks "whether the defendant holds money, which belongs to the plaintiff." *Ibid.* Contrary to the district court's ruling, Allstate has met this minimal burden by alleging it made, and Defendants received, payments based on unreasonable and unnecessary medical care. *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Misra*, 658 F. Supp. 3d 362, 376–77 (W.D. Tex. 2023) (denying motion to dismiss where the complaint alleged a similar scheme to defraud an insurer).

In response, Defendants argue that Allstate's claim fails because claimants acquired the funds in good-faith settlements. That argument fails. Allstate did not have to plead any "wrongdoing" to meet its pleading burden, only that "the defendant has received money which rightfully belongs to another." *Misra*, 658 F. Supp. 3d at 376 (citation omitted).

Accordingly, the district court erred in dismissing Allstate's claims for unjust enrichment and money-had-and-received.

D

Finally, in light of our holding that the district court erred in granting Defendant's motion to dismiss Allstate's claims, we need not address the court's denial of Allstate's request to amend its complaint.

IV

The district court's judgment is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.